JOSEPH MITCHELL *vs.* PHILIP M. PETTY, *et ux.*

January Term, 1868.

M. died, seized of two tracts of land, known respectively as "Tanner" and "Walker" tracts. He left nine heirs. Two of them, Catherine and Cassandra, sold to J. M. their interest in the "Tanner" tract with covenants of general warranty. Subsequently in a suit of partition between the heirs of M., the interest of Catherine in the whole of the estate, thirty-five acres, was assigned to her in the "Tanner" tract alone, and the interests of Cassandra was assigned to her in the "Walker" tract alone. After the assignment J. M. took possession of Catherine's interest in the "Tanner" tract and retained the same; whereupon she brought suit to recover out of that interest a parcel equal in value to the one-ninth part of her interest in the "Walker" tract. HELD:

1. That she was estopped from any claim in the "Tanner" tract by reaof her covenants of general warranty.

2. Cassandra being a co-vendor and warrantor with Catherine, the latter is entitled to pursue the land assigned the former in the "Walker" tract for indemnity for her loss on her account.

*Philip M. Petty* and *Catherine*, his wife, late *Catherine Mitchell*, filed their bill in the circuit court of *Lewis* county in March, 1859, claiming to be entitled to a certain interest in a certain tract of land of which her father, *John Mitchell*, died, seized. It appeared that *John Mitchell* died possessed of two tracts of land, known as the "Tanner" tract containing 207 acres, and the "Walker" tract containing about 200 acres. He left nine heirs. On the 27th day of November, 1843, *Catherine* and her sister, *Cassandra Mitchell*, sold and conveyed, with covenants of general warranty, to *Joseph Mitchell* and *James West*, (the latter of whom subse-

*Absent from illness.

quently sold out to the former,) all their interest as heirs of their father in the "Tanner" tract, supposed to be one-fourth thereof.    That sometime in the year 1848, a suit of partition was had between the heirs of *John Mitchell*, deceased, in which the entire interest of *Catherine*, thirty-five acres, was assigned in the "Tanner" tract, in the whole of her father's real estate, and the entire interest of *Cassandra* in the "Walker" tract.    After the partition *Joseph*, the vendee of *Catherine*, took possession of the thirty-five acres assigned as her interest.    The claim of *Catherine* in this suit was that she was entitled to have what would be the equivalent of her interest in the "Walker" tract, set apart to her out of the thirty-five acres in the "Tanner" tract, inasmuch as she sold to *Joseph* only her interest in the latter tract and not the former.

The circuit court decreed in October, 1860, that the complainant, *Catherine*, was entitled to an interest in the thirty-five acres which had been assigned her in the "Tanner" tract, which would be equal in value to one-ninth part of the whole of the "Walker" tract of two hundred acres; and appointed commissioners to lay off that amount by metes and bounds.    The commissioners thus appointed subsequently set apart fifteen acres as her interest, and the court confirmed the report of their proceedings in September, 1865.    From this decree *Joseph Mitchell*, the vendee of *Catherine*, appealed to this court.

*Lee & Edmiston* for appellant.
*C. Boggess* for appellees.

BROWN, President.    John Mitchell died, seized of two several tracts of land, one called the "Tanner" tract, the other the "Walker" tract.    He left nine children who inherited the said lands, two of whom, viz: Catherine, (who afterwards married Philip M. Petty,) and Cassandra, sold and conveyed, with general warranty, one undivided fourth part of the "Tanner" tract to Joseph Mitchell and James West. The said lands were subsequently partitioned in a suit for

the purpose between the heirs of John Mitchell, deceased, and the entire interest of the said Catherine in both tracts assigned to her in the "Tanner" tract, and the entire interest of said Cassandra in both tracts was assigned to her in the "Walker" tract.

It is not proved that Joseph Mitchell was a party to the partition suit or concluded by it. But under his conveyance from Catherine and Cassandra he (having purchased the interest of James West) took possession of the part (viz: 35 acres) assigned to Catherine and held it for many years, when Catherine, and her husband Petty, filed their bill and obtained a decree for 15 acres of the said 35, as the equivalent of her interest in the "Walker" tract. And from that decree Joseph Mitchell appealed to this court.

Petty and wife do not controvert the right of Joseph Mitchell to 20 acres of the part so assigned to her, that being equivalent to her interest in the "Tanner" tract and conveyed by her deed to Joseph Mitchell, but she insists that the 15 acres, which are the equivalent of her interest in the "Walker" tract not conveyed, are still hers. For Joseph Mitchell it is contended that the general warranty of Catherine and Cassandra, estops her from claiming the same against the vendee, who even then gets less than his purchase from both by at least 5 acres.

The first point to be decided then is as to the effect of the said warranty. It is a general rule that a party is estopped by his general warranty, and I see no good reason to take this case out of the operation of that rule.

I think, therefore, that the complainants, Petty and wife, were estopped from claiming the 15 acres in question, and the court erred in decreeing the same to them. Cassandra, the other covendor and warrantor with the said Catherine, is a party to the bill, and the prayer is for general relief. The said Petty and wife are entitled to pursue the land assigned to Cassandra in the "Walker" tract for indemnity for the loss on her account; but if it has been conveyed to a *bona fide* purchaser without notice then they would be equally entitled to a decree against Cassandra for the value

thereof. And as there is evidence in the cause going to show a sale by Cassandra to one Prestley McIntire, who is not a party to this suit, the decree of the circuit court should be reversed with costs to the appellant, and the cause remanded to the court below with leave to amend the bill if deemed necessary, and there to be proceeded in as may seem right.

MAXWELL, J., concurred.

DECREE REVERSED.